**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Nov 18 2014, 10:05 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SCOTT H. DUERRING**
South Bend, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| K.M., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 71A04-1405-PO-236 |
| | ) | |
| D.S., | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT 5
The Honorable Jenny Pitts Manier, Judge
Cause No. 71D05-1401-PO-010001

**November 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

K.M. appeals the trial court's issuance of an order for protection against him in favor of D.S. On appeal, K.M. argues that there was insufficient evidence to support the issuance of the protective order.

We affirm.

K.M. and D.S. had been living together in an intimate relationship for more than four years when, in December 2013, D.S. ended the relationship and moved out of the shared residence. After the relationship ended, D.S. repeatedly observed K.M. following her in his car and driving by her home. K.M. also left letters for D.S. expressing his continuing feelings for D.S. and his dissatisfaction with the ending of the relationship. Additionally, K.M. continuously called D.S. and sent her text messages.

On January 8, 2014, D.S. petitioned for and obtained an ex parte Order for Protection against K.M. On January 22, 2014, K.M filed a request for a hearing. A hearing was held on February 24, 2014, at the conclusion of which the trial court issued an Order of Protection against K.M. K.M. now appeals.

We first note that D.S. did not file an appellee's brief. When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *Zoller v. Zoller,* 858 N.E.2d 124 (Ind. Ct. App. 2006). In such cases, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id.* We will affirm, however, if the appellant fails to carry this burden. *Aiken v. Stanley*, 816 N.E.2d 427 (Ind. Ct. App. 2004).

On appeal, K.M. challenges the sufficiency of the evidence to support the issuance

of the protective order. In reviewing the sufficiency of the evidence to support such an order, this court will neither reweigh the evidence nor judge the credibility of witnesses. *Tisdial v. Young*, 925 N.E.2d 783 (Ind. Ct. App. 2010). We will consider only the probative evidence supporting the trial court's judgment, as well as any reasonable inferences therefrom. *Id.*

Under the Civil Protection Order Act (CPOA), "[a] person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a … person who has committed stalking under IC 35-45-10-5." Ind. Code Ann. § 34-26-5-2(a)(2) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). The court may issue an order for protection only upon a finding, by a preponderance of the evidence, "that domestic or family violence has occurred." I.C. § 34-26-5-9(a) and (f) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly); *Tisdial v. Young*, 925 N.E.2d at 785. For purposes of the CPOA, "domestic or family violence" includes stalking as defined in Ind. Code Ann. § 35-45-10-1 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), "whether or not the stalking . . . is committed by a family or household member." Ind. Code Ann. § 34-6-2-34.5 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). "The respondent in such an action may be a person with whom the petitioner had been in a dating or sexual relationship."

3

*A.S. v. T.H.*, 920 N.E.2d 803, 806 (Ind. Ct. App. 2010) (citing I.C. § 34-6-2-44.8(2) and (3) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly)).

Stalking is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." I.C. § 35-45-10-1. "Harassment" in this context is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuous impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). "Impermissible contact" includes but is not limited to knowingly or intentionally following or pursuing the victim. I.C. § 35-45-10-3 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). "[T]he term 'repeated' in Indiana's anti-stalking laws means 'more than once.'" *Johnson v. State,* 721 N.E.2d 327, 332-33 (Ind. Ct. App. 1999), *trans. denied.*

In this case, the trial court entered the protective order based on a finding that K.M. had stalked D.S.[1] K.M. argues that the evidence is insufficient to establish stalking

---

[1] We note that many of the facts referenced in this opinion are taken from a five-page document D.S. attached to her protective order petition. The document is a journal detailing events that took place

4

as defined in I.C. § 35-45-10-1. First, K.M. notes that the statutory definition of stalking specifically provides that "[t]he term does not include statutorily or constitutionally protected activity." *Id.* According to K.M., "if K.M. was seen driving on a public street by D.S., that activity is constitutionally protected and cannot be supportive of a finding of stalking or harassment." *Appellant's Brief* at 5. In support of this argument, K.M. cites *VanHorn v. State*, 889 N.E.2d 908 (Ind. Ct. App. 2008), *trans. denied*, in which this court reversed a defendant's stalking conviction because the defendant's conduct in parking his vehicle on a public street near the victim's house on four separate occasions was constitutionally protected activity. (citing *City of Chicago v. Morales*, 527 U.S. 41 (1999) (explaining that "the freedom to loiter for innocent purposes is part of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment")).[2]

This case is easily distinguishable from *VanHorn*. Here, K.M. did not merely loiter near D.S.'s home; instead, he followed her repeatedly on public streets. The relevant statutes specifically provide that such actions may amount to stalking. *See* I.C. § 35-45-10-3 (providing that "impermissible contact" includes "knowingly or intentionally following or pursuing the victim"). Although traveling on public roadways might be

---

between D.S. and K.M. from December 12, 2013 until January 7, 2013—the day before D.S. filed her petition. On appeal, K.M. argues that to the extent the trial court considered the document, it erred. Because K.M. did not raise this argument before the trial court, he has waived appellate review of this issue. *See Hape v. State*, 903 N.E.2d 977 (Ind. Ct. App. 2009) (noting that a party may not raise an argument for the first time on appeal), *trans. denied.*

[2] K.M. also cites *Kent v. Dulles*, 357 U.S. 116 (1958) for the proposition that "the right to travel is part of the liberty of which the citizen cannot be deprived without the due process of law under the 5th Amendment." *Appellant's Brief* at 9. Aside from reciting this general principle, K.M. has not developed this argument further. We note that *Kent v. Dulles* addressed the constitutionality of certain restrictions imposed on the issuance of passports. Its relevance to the facts before us is marginal at best. Moreover, the case itself recognizes that the right to travel may be subject to some degree of regulation.

constitutionally protected in the broader sense, K.M. has cited no authority remotely supporting the proposition that this right encompasses the right to repeatedly pursue another person.

K.M. also argues that his conduct cannot be considered stalking because there is no evidence that D.S. ever asked him to leave her alone. K.M. cites no statutory authority supporting a conclusion that D.S. had a duty to do so. Instead, he relies on *Maurer v. Cobb-Maurer*, 994 N.E.2d 753 (Ind. Ct. App. 2013). In that case, a wife sought a protective order against her estranged husband based on her allegations that he had sent her many emails and text messages expressing his desire to reconcile. This court concluded that there was insufficient evidence of stalking, in part because there was no indication that the wife had told her husband "to stop contacting her or made any attempt to avoid communication with him[.]" *Id.* at 759. This court found "this lack of evidence significant, because one could hardly characterize mutual communication between two parties as harassment within the meaning of the stalking statute." *Id.*

Again, we find this case distinguishable. If the protective order in this case were premised solely on non-threatening phone calls and written communications, *Maurer v. Cobb-Maurer* might give us pause. But in this case, in addition to making numerous phone calls, sending text messages, and leaving letters for D.S., K.M. also repeatedly followed her in his car and went to her place of work. We do not think it necessary for a protective order petitioner to explicitly communicate that such contact is unwanted.

Finally, K.M. argues that there is no evidence that D.S. actually felt terrorized, frightened, intimidated, or threatened by K.M.'s actions. In support of this argument,

6

K.M. cites *Maurer v. Cobb-Maurer*, 994 N.E.2d at 759, in which this court found insufficient evidence of stalking in part because the petitioner "offered no testimony at the hearing regarding the effect the contacts had on her."

We note that D.S. proceeded pro se at the protective order hearing. As a result, D.S.'s testimony was rather brief, and most of it came in response to questions posed by the trial court. D.S. was not specifically asked whether she felt terrorized, frightened, intimidated, or threatened by K.M.'s actions, and she did not expressly state that she felt that way. Nevertheless, we conclude that it was reasonable for the trial court to infer as much. D.S. testified concerning an incident in which she was driving to a store and saw K.M.'s vehicle pass her. Instead of going to that store, she waited for a moment and then crossed the road and went to another store. Additionally, the journal D.S. attached to her protective order petition detailed numerous actions she took in order to avoid K.M. On one occasion, D.S. changed her regular work schedule so K.M. would not know where to find her. She shopped at different stores, and when she saw K.M. following her, she took evasive actions in order to "lose" him. When D.S. went to a New Year's Eve party that K.M. knew she might attend, she was nervous about walking to her vehicle alone. Moreover, when D.S. decided that she was going to move out of the shared residence, she did not initially tell K.M. because she was concerned about his reaction. These facts, taken together, support a reasonable inference that D.S. felt terrorized, frightened, intimidated, or threatened. For all of these reasons, we conclude that the protective order was supported by sufficient evidence.

Judgment affirmed.

7

VAIDIK, C.J., and MAY, J., concur.